

**Chase Home Finance LLC**
P.O. BOX 100564
FLORENCE, SC 29502-0564
Insurance Processing Center

November 25, 2010

PHILLIP C PULLEY
DEVRA K PULLEY
PO BOX 49
HUNTINGDON VALLEY, PA 19006-0049

## NOTICE OF PURCHASE OF WIND INSURANCE
### PLEASE READ CAREFULLY

SUBJECT:   Loan Number:      0688158229
           Property Location: 2319 NE 29TH STREET
                              LIGHTHOUSE POINT, FL 33064

Dear PHILLIP C PULLEY:

We have previously sent you letters emphasizing the need to furnish us with proof of continuous wind and hail insurance (hereafter, "wind insurance"). To date we have not received a response to our request and, as a result, we have purchased limited wind insurance coverage at your expense. The insurance policy showing the coverage amounts and premium is enclosed. Your mortgage or deed of trust permits us to purchase coverage in these circumstances. We will charge your escrow account the premium due for the insurance we obtained. If you do not have an escrow account, we will open one. In either case, your monthly payments will increase.

As indicated in our previous letters to you:

- The cost of the wind insurance we obtained is likely to be much higher than insurance you purchase on your own. This is because the insurance we purchase is issued automatically without evaluating the risk characteristics of the property. The premium for the insurance coverage is $61,629.75. You can determine the difference in the cost by comparing this amount to the cost an insurance agent or an insurance company will charge for similar insurance.

- The wind insurance we obtained is primarily for the benefit of the person or company who presently owns your mortgage loan. If you incur property damage or loss, you may not have adequate coverage for any damages that you suffer because the person or company that owns your loan will be paid first.

- The wind insurance we obtained will cover only the structure of your home (i.e., the walls, floors, roof and anything permanently attached).

    - It will not cover your furniture or any of your other personal belongings.

    - It will not cover the cost of temporarily living outside of your home because it was damaged and is being repaired.

    - It will not cover any liability to you personally for someone who is injured while on your property.

600W3-1110

- The wind insurance we obtained is limited and will **not** cover any amounts you feel your home is worth in excess of the last known amount of wind coverage that you obtained and we entered in our records. If we did not know the coverage amount of your last wind policy, we purchased coverage in the amount of the unpaid principal balance of your loan on the date we requested the insurance coverage to begin. If you believe that the amount of coverage shown in the enclosed policy exceeds the value of the home, please call our Insurance Center at 1-866-310-3770.

As previously indicated, a Chase affiliate will receive an economic benefit in connection with the wind insurance purchased for you.

You may still obtain your own wind insurance coverage and we strongly recommend that you do so. This will allow you to choose a policy that meets your needs from a company that you select. Your choice of an insurance company or agent will not affect our credit decisions in any way. If you purchase your own wind insurance, please send proof immediately to the address below or you may fax a copy of your policy to 1-843-413-2026. Your proof must show that the "standard mortgagee clause" is included in your insurance policy. A correct mortgagee clause, including your loan number, will ensure that insurance notices are received in a timely manner and will enable the prompt payment or updating of your insurance policy. The "standard mortgagee clause" should read exactly as follows:

> CHASE HOME FINANCE, LLC
> ITS SUCCESSORS AND/OR ASSIGNS
> P.O. BOX 100564
> FLORENCE, SC  29502-0564

Once you obtain your own wind insurance, we will cancel the limited wind insurance we obtained and replace it with yours. We will charge you for the coverage we obtained only for the time the coverage was in effect (i.e., prior to the effective date of the coverage you obtain). If you are due a refund, your escrow account will be credited.

If you or your insurance agent have any questions about your obligation to provide evidence of insurance or any information in this letter, please call the Insurance Processing Center at 1-866-310-3770. A Customer Care Professional is available to assist you Monday through Thursday 8:00 a.m. to 12:00 a.m. midnight EST and Friday 8:00 a.m. to 10:00 p.m. EST.

Sincerely,

Insurance Processing Center

**IMPORTANT BANKRUPTCY INFORMATION**
If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this correspondence is for informational purposes only and is not an attempt to collect a debt.

**VOYAGER INDEMNITY INSURANCE COMPANY**
PO BOX 50355, ATLANTA, GA 30302
A Stock Insurance Company

POLICY NUMBER:
RWS06001007461

## RESIDENTIAL WINDSTORM POLICY
## ADDITIONAL INSURED ENDORSEMENT

**ADDITIONAL INSURED (MORTGAGOR)**-Name and Address
(Street No., City, State, Zip)
PHILLIP C PULLEY
DEVRA K PULLEY
PO BOX 49
HUNTINGDON VALLEY, PA 19006-0049

**NAMED INSURED (MORTGAGEE)**-Name and Address
CHASE HOME FINANCE, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 100564
FLORENCE, SC 29502-0564

LOAN NUMBER: 0688158229

Coverage is provided where a premium or limit of liability is shown for the coverage, subject to all conditions of this policy.

| POLICY PERIOD ONE YEAR | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|
| EFFECTIVE DATE: 09/12/2010  Effective Time: 12:01 am | Coverage A | $1,638,000 | $57,330.00 |
| EXPIRATION DATE: 09/12/2011 | | | |
| DESCRIBED LOCATION 2319 NE 29TH STREET LIGHTHOUSE POINT, FL 33064 | | | |
| | CPIC ASSESSMENT | 0.01400 | $802.62 |
| | FHCF ASSESSMENT | 0.01000 | $573.30 |
| | FL SURPLUS LINES TAX | 0.05000 | $2,866.50 |
| | FL STAMP FEE | 0.00100 | $57.33 |
| | | | |
| | ANNUAL PREMIUM AMOUNT | | $57,330.00 |
| | ANNUAL TOTAL CHARGED | | $61,629.75 |

Forms and endorsements which are made a part of this policy at time of issue:
MSP-WND-RES-POL (10-08),MSP-WND-RES-END-S-FL (04-09),NOT-1-VIIC (10-08)

Subject to the terms and provisions of the Mortgage Service Program, including but not limited to the Residential Windstorm coverage form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such property, subject to the following additional provisions:

a. The above Named Insured Mortgagee is authorized to act for such Additional Insureds in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.
b. The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded.
c. Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee and the Additional Insured as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Insured, at our option.

**Deductible** – applies separately to each building or structure, per loss: 2% of the Coverage A Limit of Liability or $2,000, whichever is greater.

ALL OTHER INQUIRIES
1-866-310-3770

CLAIMS INFORMATION ONLY
1-800-326-7781

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

**SURPLUS LINES INSURER'S POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Surplus Lines Agent:
Laurie J Potter
TrackSure Insurance Agency, Inc.
2677 North Main Street, STE 600
Santa Ana, CA 92705
License #E164957

MSP-WND-RES-AIE (10-08)                    Page 1 of 1                    WIN001-0509

# MORTGAGE SERVICE PROGRAM
# RESIDENTIAL WINDSTORM POLICY

Insurance is provided only (1) against the perils of hurricane, tropical storm, other windstorm or hail as defined in the Policy, (2) with respect to those items specifically described and for which a specific Limit of Liability is shown in the Additional Insured Endorsement, and (3) for the Policy period specified in the Additional Insured Endorsement; and, unless otherwise provided, all conditions and provisions of the Policy forms and endorsements to which the Additional Insured Endorsement is attached shall apply separately to each item covered.

"THIS IS A POLICY LIMITED TO HURRICANE, TROPICAL STORM, OTHER WINDSTORM OR HAIL. IT DOES NOT PROVIDE FLOOD, STORM SURGE OR WAVE WASH COVERAGE. CONSULT YOUR AGENT FOR AVAILABILITY OF FLOOD COVERAGE."

## AGREEMENT

We will provide the insurance described in this Policy in return for the premium, and compliance with, all applicable provisions of this Policy for a term specified from the inception date shown at 12:01 A.M. (Standard time) to the expiration date shown at 12:01 A.M. (Standard time), shown on the Additional Insured Endorsement.

## DEFINITIONS

Throughout this Policy **you** and **your** refer to the **Named Insured** (Mortgagee) and the **Additional Insured** (Mortgagor) shown in the Additional Insured Endorsement. **We, us** and **our** refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **Described Location** means the **residence premises**.
2. **Residence Premises** means:
   a. The dwelling, meaning the legal description, or common street address, of real property which has been pledged under a valid deed of trust, mortgage document, or any other mortgage instrument as security for a loan made or assumed by an insured and upon which a dwelling is situated.
   b. Structures attached to the dwelling; or
   c. the unit; or
   d. the **mobile home**, when described as a **mobile home** on land owned or leased by **you**;
   Used principally for dwelling purposes and which is shown as the **described location** in the Additional Insured Endorsement.
3. **Business** includes trade, profession or occupation.
4. **Mobile Home** means:
   a. A building which satisfies the National Mobile Homes Construction and Safety Standards, as presently existing or hereafter amended, or the American Society of Civil Engineers Standard ANSI/ASCE 7-88.
   b. A manufactured home is a structure built on a permanent chassis, transported to its site in one or more sections and affixed to a permanent foundation.
5. **Perils Insured Against** means the perils of hurricane, **tropical storm** and **other windstorm** and hail for which coverage is provided under this Policy.
6. **Other Windstorm** means wind, wind gusts, tornadoes or cyclones which results in direct physical loss or damage to property.
7. **Hurricane Loss** means any loss or damage resulting from the peril of windstorm caused by a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service during any period:
   a. Beginning at the time a hurricane watch or hurricane warning is issued by the National Hurricane Center of the National Weather Service;
   b. Continuing in effect for as long as hurricane conditions exist; and
   c. Ending 72 hours following the termination of the last hurricane watch or hurricane warning issued by the National Hurricane Center of the National Weather Service.
8. **Association Owner** refers to an association of building owners collectively and is inclusive of the following types of organizations: Property owner associations, homeowner associations, townhouse associations, condominium associations, apartment associations, etc.
9. **Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, toxins, spores, scents or by-products produced or released by **fungi**.
10. **Tropical Storm** means a storm system that has been declared to be a **tropical storm** by the National Hurricane Center of the National Weather Service. The duration of the **tropical storm** includes the time period, at the **described location**:
    a. Beginning at the time a **tropical storm** watch or **tropical storm** warning is issued by the National Hurricane Center of the National Weather Service;
    b. Continuing for the time period during which the **tropical storm** conditions exist; and
    c. Ending 72 hours following the termination of the last **tropical storm** watch or **tropical storm** warning issued by the National Hurricane Center of the National Weather Service.
11. **Actual Cash Value** means the amount it would currently cost to repair or replace Covered Property with new material of like kind and quality, less allowance for physical deterioration and depreciation and depreciation, including obsolescence.
12. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERED PROPERTY

This insurance applies to the **described location**; the following Coverages for which a Limit of Liability is shown on the Additional Insured Endorsement for the **perils insured against** and for which a premium is stated on the Additional Insured Endorsement, and which is not excluded or limited elsewhere in this Policy.

### Coverage A – Dwelling and Mobile Home Coverage
We cover:
1. The dwelling or **mobile home**, on the **residence premises**, shown in the Additional Insured Endorsement, including structures attached to the dwelling or **mobile home**;
2. When the Covered Property is described as a **mobile home** in the Additional Insured Endorsement, we cover structures and utility tanks attached to the **mobile home** and the following and similar type items installed on a permanent basis: floor coverings, appliances, dressers and cabinets;
3. Materials and supplies within an enclosed structure on the **residence premises** used to construct, altar, or repair the dwelling or **mobile home** or other structures on the **residence premises**; and
4. If not otherwise covered in this Policy; building equipment, fixtures and outdoor equipment permanently installed and used for the service of and located on the **residence premises**.

This coverage does not apply to land, including land on which the dwelling or **mobile home** is located.

### PROPERTY NOT COVERED

1. We do not cover:
    a. Personal property of any kind, including contents, additions or alterations usual to the occupancy as a dwelling or owned or used by **you** or members of **your** family residing with **you** or owned by a guest or servant.
    b. Pilings, piers, wharves, retaining walls, seawalls, bulkheads, beach or diving platforms or appurtenances, docks or boathouses;
    c. Trees, shrubs, plants, flowers, or lawns;
    d. Windmills, wind pumps or their towers, or smoke stacks;
    e. Awnings;
    f. Steeples and fountains;
    g. Grain, hay, straw and other crops, crop silos or their contents;
    h. Bridges, boardwalks, trestles, catwalks, dunewalks, ramps, roadways, walks, decks and patios and similar structures, or other paved or graveled surfaces, whether or not attached to the building;
    However, we do cover ramps, walks, decks and patios attached to Covered Property described in Coverage A.
    i. Amusement equipment;
    j. Any structure or attachment, whether attached or separate from the covered building, where that structure's roof coverings are of thatch, lattice, or slats and similar material; or where that structure's exterior wall coverings are of thatch, lattice, or slats and similar material, and personal property contained within or on these structures;
    k. Slat houses, chickees, tiki huts, gazebos, bathhouses, pergolas and similar open sided structures, fabric windscreens on fences and personal property contained within, or on these structures;
    l. Signs, radio or television antennas or aerials, satellite dishes (including lead-in wiring, masts or towers and their supports), and utility poles including light fixtures;
    However, we do cover solar paneling and other similar water heating and electrical apparatus when:
      (1) outside the building (including lead-in pipes, wiring, masts or towers and their supports),
      (2) permanently installed,
      (3) located on the **residence premises**; and
      (4) used for the service of the Covered Property.
    m. Land, including land on which the other structures are located.

### OTHER COVERAGES

1. **Other Structures**
    Subject to the Conditions of this Policy, we cover Other Structures on the **described location**, separated from the dwelling or **mobile home** by a clear space. Structures connected to the dwelling or **mobile home** by only a fence, utility line or similar connection are considered to be Other Structures.
    We do not cover Other Structures:
    a. used in whole or in part for commercial, manufacturing or farming purposes, or
    b. rented or held for rental to any person not a tenant of the dwelling or **mobile home**, unless used solely as a private garage.
    The amount of insurance on Other Structures shall be limited to 10% of the dwelling coverage as an additional amount of insurance.
2. **Debris Removal.** We will pay **your** reasonable expense for the removal of:
    a. Debris of Covered Property if the **perils insured against**, that applies to the damaged property, causes the loss.
    b. This expense is included in the Limit of Liability that applies to the damaged property.
3. **Glass or Safety Glazing Material**
    a. We cover:
      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and
      (2) The direct physical loss to Covered Property is caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window;

(3) when loss in 3.a.(1) and 3.a.(2) above results from direct physical loss by the **perils insured against**.
   b. This coverage does not include loss to Covered Property which results because the glass or safety glazing material has been broken, except as provided in 3.a.(2) above.
   c. Loss to glass covered under this **OTHER COVERAGE 3.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the Limit of Liability that applies to the damaged property.

4. **Loss Assessment**
   a. We will pay **your** share, up to the Limit of Liability shown in the Additional Insured Endorsement, for loss assessment, per unit, charged during the Policy period against **you** by an **association owner**, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by the **perils insured against**;
   b. This coverage applies only to loss assessments charged against **you** as owner of the **residence premises**,
   c. We do not cover loss assessments charged against **you** or an **association owner** by any government body;
   d. This coverage is within the Limit of Liability, regardless of the number of assessments;

   Coverage for loss assessments shall be excess over any insurance in the name of the association covering the same property covered under this Policy. A loss shall not be paid under this Policy until we have verified the extent to which the loss to improvements within the dwelling and to the common areas of the condominium is also covered under the insurance of the association.

5. **Fungi, Wet Or Dry Rot, Yeast Or Bacteria**
   a. We will pay up to $10,000 for:
      (1) The total of all loss payable under this Policy caused by fungi, wet or dry rot, yeast or bacteria;
      (2) The cost to remove fungi, wet or dry rot, yeast or bacteria from Covered Property under this Policy;
      (3) The cost to tear out and replace any part of the building or other Covered Property as needed to gain access to the fungi, wet or dry rot, yeast or bacteria; and
      (4) The cost of testing of air or property to confirm the absence, presence or level of fungi, wet or dry rot, yeast or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of fungi, wet or dry rot, yeast or bacteria.

   b. The coverage described in a. only applies when such loss or costs are a result of the **perils insured against** that occurs during the Policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the **perils insured against** occurred.

   c. $10,000 is the most **we** will pay for the total of all loss or costs payable under this Policy, regardless of the:
      (1) Number of **described locations** insured; or
      (2) Number of occurrences or claims made; or
      (3) Number of Insureds.

   This coverage does not increase the Limit of Liability applying to the damaged Covered Property.

6. **Reasonable Repairs.**
   In the event that Covered Property is damaged by the **perils insured against, we** will pay the reasonable cost incurred by **you** for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, **we** will pay for those measures only if that property is covered under this Policy and the damage to that property is caused by the **perils insured against**.

   This coverage:
   a. Does not increase the Limit of Liability that applies to the Covered Property.
   b. Does not relieve **you** of **your** duties, in case of a loss to Covered Property, as set forth in **CONDITIONS, 4.** Your Duties After Loss.

7. **Property Removed**
   a. When this insurance applies to a **mobile home** described in the Additional Insured Endorsement, if at anytime the **mobile home** is endangered by the **perils insured against** and removal is necessary to avoid damage;
      (1) **We** will pay the reasonable expense incurred by **you**, not to exceed $500, for the removal and return of the **mobile home**; and
      (2) No deductible applies to this expense.

**PERILS INSURED AGAINST**

**We** insure for direct physical loss to property described in the Covered Property Section of this Policy, when such property is described in the Additional Insured Endorsement, caused by the **perils insured against** as described and limited below, unless;
   a. coverage is limited elsewhere in this Policy; or
   b. the loss is excluded in General Exclusions.

The **perils insured against** do not include:
   a. Frost or cold weather;
   b. Ice (other than hail), snow or sleet, whether driven by wind or not; and
   c. Accumulation, freezing, thawing, pressure or weight of hail, ice, snow, sleet, rain, water or any other form of precipitation.

In event of a Hurricane, **tropical storm**, other windstorm, or Hail, **we** will pay for the following:
   a. Loss or damage caused by rain, snow, sleet, sand or dust driven by a hurricane or **tropical storm** to the interior portion of **your** covered building or other structure; provided there is damage caused by hurricane or **tropical storm** to the exterior of

the building or structure, causing an opening through which the wind driven rain, snow, sleet, sand or dust entered; and
   b. Loss or damage to covered personal property located in the inside of **your** building or structure, caused by wind driven rain, snow, sleet, sand or dust, provided that the direct force of hurricane or **tropical storm** damages the exterior of the building or structure, causing an opening through which the wind driven rain, snow, sleet, sand or dust entered.

**GENERAL EXCLUSIONS**

We do not insure for any loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Loss to the Interior of a Building**, caused by water, steam or other substance from sprinkler equipment, plumbing, heating, air conditioning, household appliance, sump pump, sump, or other piping, unless the equipment or piping is first damaged as a direct result of the **perils insured against**.
2. **Ordinance or Law**, meaning any ordinance or law:
   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 2.a. does not apply to the amount of coverage that is provided under **OTHER COVERAGES, 3.** Glass or Safety Glazing Material,
   b. The requirements of which result in a loss in value to property; or
   c. Requiring **you** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants** as that term is defined in **OTHER COVERAGES, 5.** Fungi, Wet Or Dry Rot, Yeast Or Bacteria.
   This exclusion applies whether or not the property has been physically damaged.
3. **Earth Movement and Settlement**, meaning:
   a. Earthquake, including land shock, waves or tremors before, during or after a volcanic eruption;
   b. Landslide, mudslide or mudflow;
   c. Clay shrinkage or other expansion or contraction of soils or organic materials;
   d. Settling, cracking or expansion of foundations;
   e. Subsidence, sinkhole loss, catastrophic ground cover collapse, sinkhole activity; or
   f. Any other earth movement including earth sinking, rising or shifting;
   caused by or resulting from human or animal forces or any act of nature.
4. **Water Damage**, meaning:
   a. Flood, surface water, waves, tidal water, storm surge, wave wash, or tidal wave, overflow of a body of water, or spray or water-borne material from any of these, whether or not driven by wind; or
   b. Water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump; sump pump or related equipment; or
   c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
5. **Sinkhole Collapse**, meaning actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.
6. **Excavation and Foundation Exclusion.** This Policy does not cover: cost of excavations, grade or filling, foundations of buildings or other structures, machinery, boilers or engines where foundations are below the undersurface of the lowest basement floor, or if there is no basement, below the surface of the ground.
7. **Pilings, Piers, Pipes, Flues and Drains Exclusion.** This Policy does not cover pilings, piers, pipes, flues and drains which are underground; and pilings which are below the low water mark.
8. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **described location**. But if the failure of power or other utility service results in a loss from a **peril insured against** on the **described location**, we will pay for the loss.
9. **Sudden and Accidental Damage** from artificially generated electrical current. We will not pay for loss or damage caused by, or resulting from, artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires including loss to a tube, transistor or similar electronic component.
10. **Neglect**, meaning **your** neglect to use all reasonable means to save and preserve property, at and after the time of loss.
11. **War**, including the following and any consequence of any of the following:
    a. Undeclared war, civil war, insurrection, rebellion, usurped power, revolution;
    b. Warlike act by a military force or military personnel;
    c. Destruction or seizure or use for a military purpose.
    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.
12. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of the Conditions.

13. **Wear, Tear, Marring, Deterioration,** and **Decay.**
14. **Inherent Vice, Latent Defect** and **Mechanical Breakdown.**
15. **Rust,** smog or other corrosion.
16. **Settling,** shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings.
17. **Birds,** vermin, rodents, insects or domestic animals.
18. **Smoke** from agricultural smudging or industrial operations or sudden and accidental damage from smoke.
19. **Discharge,** dispersal, seepage, migration, release or escape of **pollutants.**
20. **Consequential Losses** including but not limited to rental value, business income or business interruption.
21. **Intentional Loss**
    a. Intentional Loss means any loss arising out of any act **you** or any person or organization named as an **additional insured** commits or conspires to commit with the intent to cause a loss.
    b. In the event of such loss, neither **you** nor any such person or organization is entitled to coverage, even those who did not commit or conspire to commit the act causing the loss.
22. **Existing Damage.** This Policy is not intended to and does not provide coverage for any claims or damages:
    a. Occurring prior to policy inception regardless of whether such damages were apparent at the time of the inception of this Policy or discovered at a later date; or
    b. Claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception; or
    c. Coverage for any amount until and unless all structures covered by **your** previous policy have been fully and completely repaired.

    Prior to such completion of repairs, coverage will be limited to the greater of:
    (1) The **actual cash value** of the property at the time of a covered loss occurring during this policy period; or
    (2) The cost of repairing the property to a state at which it existed at the time of a covered loss, provided that such repairs have been made.
    This exclusion does not apply in event of a total loss.
23. **Fire,** lightning, vehicular damage, aircraft damage, riot, explosion or theft.
24. **We** do not insure for loss to property described in Coverage A caused by any of the following. However, any ensuing loss to property described in Coverage A and caused by the **perils insured against,** which is not otherwise excluded or excepted in this Policy is covered.
    a. **Weather Conditions.** However, this exclusion only applies if weather conditions other than the **perils insured against** contribute in any way with a cause or event excluded in General Exclusions above, to produce the loss;
    b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;
    c. **Faulty, inadequate or defective:**
       (1) planning, zoning, development, surveying, siting;
       (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
       (3) materials used in repair, construction, renovation or remodeling; or
       (4) maintenance of part or all of any property whether on or off the **residence premises.**
25. **Fungi, Wet Or Dry Rot, Yeast, Or Bacteria,** meaning the presence, growth, proliferation, spread or any activity of Fungi, Wet Or Dry Rot, Yeast, Or Bacteria.
    This Exclusion does not apply to the extent coverage is provided for in the Fungi, Wet Or Dry Rot, Yeast Or Bacteria coverage under **Other Coverages 5.** with respect to loss caused by the **perils insured against.**
    Direct loss by the **perils insured against** resulting from Fungi, Wet or Dry Rot, Yeast Or Bacteria is covered.

## DEDUCTIBLES

When a loss is covered under this Policy, **we** will pay only that part of the loss that exceeds **your** deductible amount, subject to the Limit of Liability that applies. The deductible amount is shown on the Additional Insured Endorsement.

## CONDITIONS

1. **Policy Period.** This Policy applies only to loss which occurs during the policy period.
2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** shall not be liable in any one loss:
   a. For an amount greater than the interest of the persons insured under this Policy at the time of loss; or for more than the applicable limit of liability, whichever is less.
   b. If the **described location** is vacant and the mortgage on the property has been declared in default by the Named Insured Mortgagee at the time of loss, **we** shall be liable for no more than the **named insured's** interest in the property at the time of loss.

   The **named insured's** interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this Policy.
3. **Concealment or Fraud.**
   With respect to all persons insured under this Policy, **we** provide no coverage for loss if, whether before, during or after a loss, any one or more persons insured under this Policy have:

a. Intentionally concealed or misrepresented any material fact or circumstance;
b. Engaged in fraudulent conduct; or
c. Made false statements relating to this insurance.

4. **Your Duties After Loss.** In case of a loss to Covered Property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to **us**. These duties must be performed either by **you** or **your** representative:
   a. Give prompt notice to **us**, or **your** producer, who is to give immediate notice to **us**.
   b. Take the following steps:
      (1) Protect the property from further damage;
      (2) Make reasonable and necessary repairs to protect the property;
      (3) Keep an accurate record of repair expenses;
      (4) Prepare an inventory of damaged and undamaged property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory; and
      (5) Cooperate with **us** in the investigation of a claim.
   c. As often as **we** reasonably require:
      (1) Show **us** the damaged property;
      (2) Provide **us** with records and documents **we** request and permit **us** to make copies; and
      (3) Submit to examinations under oath while not in the presence of any other **named insureds** and sign the same.
   d. Send to **us**, within sixty (60) days after **our** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:
      (1) The time and cause of loss; and
      (2) **Your** interest and that of all others in the Covered Property involved, and all liens on the Covered Property; and
      (3) Other insurance which may cover the covered loss; and
      (4) Changes in title or occupancy of the Covered Property during the term of the Policy; and
      (5) Specifications of damaged buildings and detailed repair estimates; and
      (6) The inventory of damaged and undamaged property described in Condition number 4.b.(4), Your Duties After Loss.

5. **Loss Payment.**
   We will adjust all losses with the **named insured**. Loss will be payable:
   a. Twenty (20) days after we receive **your** proof of loss and reach written agreement with **you**; or
   b. Sixty (60) days after we receive **your** proof of loss and:
      (1) There is an entry of a final judgment; or
      (2) There is a filing of an appraisal award or a mediation settlement with **us**.
   c. Loss will be made payable to the **named insured** and the **additional insured** as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the **named insured** and the **additional insured**, at our option. No coverage will be available to any mortgagee other than that shown as the named insured on the Additional Insured Endorsement page of this Policy.

6. **Loss Settlement.**
   Covered Property losses are settled after application of the deductible, as follows:
   a. Carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings at **actual cash value** at the time of loss, but not more than the amount necessary to repair or replace.
   b. **Mobile Home Buildings.** Buildings and Structures under Coverage A when the building is described as a **mobile home** and, if any, Other Structures located on the **residence premises** of the **mobile home**, subject to the following:
      (1) The **actual cash value** of that part of the **mobile home**, Coverage A or Other Structures and located on the premises of a **mobile home** damaged; or
      (2) That portion of the cost to repair or replace, with material of like kind or quality, with deduction for depreciation, of that part of the building damaged; or
      (3) The **mobile home** Coverage A Limit of Liability described in the Policy page(s), when **your mobile home** is totally destroyed by the **perils insured against**. This subsection (3) does not apply to or Other Structures or other Covered Property described in the Additional Insured Endorsement and located on the premises of a **mobile home**.
   c. **Dwelling Buildings.** Buildings and structures under Coverage A, and if any, Other Structures described in the Additional Insured Endorsement, other than **mobile homes** and other structures located on the premises of a **mobile home**.
   At replacement cost without deduction for depreciation, subject to the following:
      (1) We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
         (a) the Limit of Liability under this Policy that applies to the building; or
         (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or
         (c) the necessary amount actually spent to repair or replace the damaged building.
      If the loss or damage occurs to pool enclosures, cabanas, screened porches or other shelter-type structures attached to the dwelling, we will pay no more than ten percent (10%) of the Limit of Liability of the Policy applying to the dwelling. This condition does not increase the Limit of Liability applying to the dwelling property.
      (2) We will pay no more than the **actual cash value** of the damage; until actual repair or replacements is complete. Once actual repair

or replacement is complete, **we** will settle the loss according to the provisions of **c.(1)** above.
However, if the cost to repair or replace the damage is both:
(a) less than 5% of the amount of insurance in this Policy on the building; and
(b) less than $2500.
We will settle the loss according to the provisions of **c.(1)** above, whether or not actual repair or replacement is complete.
(3) **You** may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss or damage to buildings on an **actual cash value** basis. **You** may then make claim within 180 consecutive days after loss for any additional liability according to Condition 6.c., Loss Settlement, Dwelling Buildings.

d. Condominium Unit Owner. Condominium Unit Owner building items described in the Additional Insured Endorsement, building improvements or installations, made or acquired at **your** expense to that part of the building described in the Additional Insured Endorsement;
(1) If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;
(2) If the damage is not repaired or replaced within a reasonable time, at the **actual cash value** but not more than the amount required to repair or replace.

e. Our Option. If **we** give **you** written notice within thirty (30) days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the damaged property with like kind and quality.

7. **Loss to a Pair, Set or Panels.**
In case of loss to a pair, set or panels **we** may elect to:
a. Repair or replace any part to restore the pair, set or panel to its value before the loss; or
b. Pay the difference between the **actual cash value** of the property before and after the loss.
c. Pay in any loss involving part of a series of pieces or panels:
(1) The reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or
(2) The reasonable cost of providing an acceptable decorative effect or utilization as circumstances may warrant. However, **we** do not guarantee the availability of replacements, and **we** will not be liable, in the event of damage to or loss of a part, for the value, repair or replacement of the entire series of pieces or panels.

8. **Appraisal.**
If **we** fail to agree with you on the **Actual Cash Value** or Replacement Cost of the damaged property to settle upon the amount of loss, then either of **us** may demand an appraisal of the loss. In this event, **you** and **we** shall each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge or a court of record in the State where the insured property is located. The appraisers will separately state the **actual cash value**, the Replacement Cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of **actual cash value** and loss, or if it applies, the Replacement Cost and loss.
Each party will:
a. Pay its own appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

9. **Other Insurance.**
a. Coverage on any **mobile home**, dwelling or Building provided under this Policy will automatically terminate on the effective date of other valid and collectible insurance regardless of whether the existence of such other valid and collectible insurance is known to **us**. If **we** issued this Policy because the **named insured** had not received evidence of other valid and collectible insurance from the **additional insured** and the **named insured** subsequently receives such evidence, **we** request that the **named insured** notify **us** of such other valid and collectible insurance in order to update **our** records.
b. In no event shall this insurance apply as excess or contributing insurance when other valid and collectible insurance is in force on the date of loss.

10. **Subrogation.**
An Insured may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by **us**. If an assignment is sought, an Insured must sign and deliver all related papers and cooperate with **us**. Subrogation does not apply to damage to property of others.

11. **Action Against Us.**
No action can be brought against **us** unless the Policy provisions have been complied with and the action is started within two (2) years from the date the loss occurs.

12. **Recovered Property.**
a. If **you** or **we** recover any property for which **we** have made payment under this Policy, **you** or **we** will notify the other of the recovery.
b. At **your** option, the property will be returned to or retained by **you** or it will become **our** property.
c. If the recovered property is returned to or retained by **you**, the loss payment will be adjusted based on the amount **you** received for the recovered property.

13. **Abandonment of Property.**
**We need not** accept any property abandoned by you.

MSP-WND-RES-POL (10-08)

Page 7 of 8
WINP01 (5/2009)

14. **No Benefit to Bailee.**
    We will not recognize any assignment, or grant any coverage, that benefits a person or organization holding, storing or moving property for a fee, regardless of any other provisions in this Policy.
15. **Cancellation and Nonrenewal.**
    a. **Cancellation.**
        (1) Coverage under this Policy shall automatically and without prior notice, cancel when the **named insured** no longer has an interest in the **described location** or when the **named insured** has been provided with another policy that meets the requirements of the **named insured** as set forth in the mortgage agreement applicable to the **described location**.
        (2) This Policy may also be cancelled by the **named insured** by returning it to **us** or notifying **us** of the date cancellation is to take effect.
        (3) **We** may cancel this Policy by mailing notice of cancellation to the **named insured** at the address shown on the Additional Insured Endorsement or by delivering the notice not less than 30 days prior to the effective date of cancellation.
    b. **Nonrenewal.**
        We will mail to the **named insured** at the address shown on the Additional Insured Endorsement, notice of nonrenewal not less than 45 days before the end of the Policy period, if **we** decide not to renew or continue this Policy.
16. **Liberalization Clause.**
    If **we** adopt any revision which would broaden the coverage under this Policy without additional premium within 60 days prior to or during the Policy period, the broadened coverage will immediately apply to this Policy.
17. **Waiver or Change of Policy Provisions.**
    A waiver or change of any provision of this Policy must be in writing by the **named insured** or **us** to be valid. **Our** request for an appraisal or examination under oath shall not waive any of **our** rights.
18. **Assignment.**
    Assignment of this Policy will not be valid unless **we** give **our** written consent.
19. **Death.** If **you** die, **we** insure:
    a. **Your** legal representatives but only with respect to the property of the deceased covered under the Policy at the time of death;
    b. With respect to **your** property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.
20. **Nuclear Hazard Clause.**
    a. Nuclear Hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;
    b. Loss caused by the nuclear hazard will not be considered loss caused by the **perils insured against** or otherwise, whether this peril is specifically named in or otherwise included within the **perils insured against**;
    c. This Policy does not apply to loss caused directly or indirectly by Nuclear Hazard.
21. **Conditions Suspending or Restricting Coverage.**
    We are not liable for loss that occurs while there is a hazard that is increased by any means within **your** control or knowledge.
22. **Conformity with Statute.**
    The terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

*[Signature]*
SECRETARY

*[Signature]*
PRESIDENT

Mortgage Service Program
Residential Windstorm Policy

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA AMENDATORY ENDORSEMENT

**CONDITIONS**

Condition 11. **Action Against Us** is deleted and replaced by the following:

**11. Action Against Us.**
No action can be brought against **us** unless the Policy provisions have been complied with and the action is started within five (5) years from the date the loss occurs.

Condition 15. **Cancellation and Nonrenewal** is amended as follows:

Item (3) under a. **Cancellation** is deleted and replaced by the following:

> (3) **We** may cancel this Policy by delivering or mailing notice of cancellation to the **named insured** at the address shown on the Additional Insured Endorsement, as follows:
>
> (a) If **we** cancel for nonpayment of premium, **we** will give the **named insured** at least 10 days written notice accompanied by the reason for cancellation.
>
> (b) If **we** cancel for reasons other than nonpayment of premium during the first 90 days of coverage, **we** will give the **named insured** at least 20 days written notice accompanied by the reason for cancellation, except when there has been a material misstatement or misrepresentation or failure to comply with the underwriting requirements established by **us**.
>
> (c) If **we** cancel for reasons other than nonpayment of premium after coverage has been in effect for more than 90 days, **we** will give the **named insured** at least 45 days written notice accompanied by the reason for cancellation.

If **we** fail to provide the 45 days (or 20 days) notice, the coverage provided to the **named insured** shall remain in effect until 45 days after notice is given or until the effective date of replacement coverage, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

Item b. **Nonrenewal**, is deleted and replaced by the following:

> b. **Nonrenewal.**
> **We** will mail or deliver to the **named insured** a notice of nonrenewal not less than 45 days before the end of the Policy period, if **we** decide not to renew or continue this Policy. This notice will be mailed or delivered to the **named insured** at the address shown on the Additional Insured Endorsement. This notice will state the reason for nonrenewal.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

## Voyager Indemnity Insurance Company

### SERVICE OF SUIT

It is agreed that in the event of the failure of the Voyager Indemnity Insurance Company hereon to pay an amount claimed to be due hereunder, the Voyager Indemnity Insurance Company, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that Service of Suit may be made upon Richard Fortwengler, agent for service of process for Voyager Indemnity Insurance Company, 260 Interstate North Circle, Atlanta, GA 30339 and that in any suit instituted against it upon this contract, Voyager Indemnity Insurance Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. Richard Fortwengler, as agent for service of process, is authorized and directed to accept Service of Suit on behalf of the Voyager Indemnity Insurance Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Voyager Indemnity Insurance Company hereby designates the Superintendent, Commissioner, or Director of Insurance or any other officer specified for the purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named person to whom said officer is authorized to mail such process or true copy thereof.

All other terms, conditions, and agreements shall remain the same.