**(28) Captive reinsurance programs do not violate Section 8 if reinsurance is actually provided and the compensation does not exceed the value of reinsurance.**

August 6, 1997

... You then requested that the Department clarify the applicability of Section 8 of the Real Estate Settlement Procedures Act (**RESPA**) to **captive reinsurance** programs. For the reasons set forth below, we have concluded that, so long as payments for **reinsurance** under **captive reinsurance** arrangements are solely "payment for goods or facilities actually furnished or for services actually performed," these arrangements are permissible under **RESPA**. *See* paragraph 8(c)(2) of **RESPA**, [12 U.S.C.A. § 2607(c)(2)](). The following details the facts concerning **captive reinsurance** programs as we understand them, relevant law, and how the Department will scrutinize these arrangements to determine whether any specific **captive reinsurance** program is permissible under **RESPA**.

### I. BACKGROUND

A typical **captive reinsurance** arrangement involves a mortgage lender acting in concert with a fully licensed **reinsurance** affiliate of the mortgage lender and an unaffiliated primary mortgage insurer. The sole purpose of the **reinsurance** affiliate is to reinsure loans which the affiliated mortgage lender originates and which the unaffiliated, primary mortgage insurance company insures. The primary mortgage insurer and the reinsurer enter into a contract under which the primary insurer agrees to pay the reinsurer an agreed upon portion of the mortgage insurance premiums for loans originated by the lender and insured by the primary insurer. The lender, therefore, has a financial interest in having the primary insurer in the **captive reinsurance** program selected to provide the mortgage insurance. Premiums paid for the **reinsurance** may be net of an agreed upon "ceding commission," which represents the reinsurer's share of the costs of administering the book of insured business.

Under the contract between the primary insurer and the reinsurer, the reinsurer posts capital and reserves satisfying the laws of the state in which it is chartered and may also establish an additional security fund to ensure that, when a claim against the reinsurer is made, funds will exist to satisfy the claim. In exchange for a portion of mortgage insurance premiums (minus a ceding commission, if applicable) to be paid by the primary insurer, the reinsurer obligates itself to reimburse the primary insurer for an agreed portion of claims that may require payment under the contract. Under different **reinsurance** arrangements, the **reinsurance** obligations generally take one of two forms. The first is an "excess loss" arrangement, under which the primary insurer pays, and is solely responsible for, claims arising out of a given book of business up to a predetermined amount, after which the reinsurer is obligated to reimburse the primary insurer's claims up to another predetermined amount. Thereafter, the primary insurer is solely responsible for claims in excess of the reinsurer's tier of losses on a given book. A second type of contract is the "quota share" contract, under which the reinsurer would bear a portion of all insured losses.

Under **captive** arrangements of which the Department is aware, some degree of disclosure is provided to the consumer about the arrangement and some opportunity is accorded to the consumer to choose whether or not to have the loan insured through a **captive reinsurance** program.

### II. LEGAL ANALYSIS

Subsection 8(a) of **RESPA** provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding,

oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C.A. § 2607(a). "Thing of value" is further described in the Department's regulations as including "without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program… ." 24 C.F.R. § 3500.14(d). In addition, subsection 8(b) prohibits the giving or receipt of any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service "other than for services actually performed." 12 U.S.C.A. § 2607(b). These prohibitions against paying for referrals and against splitting fees are very broad and cover a variety of activities.

Subsection 8(c) of **RESPA** sets forth various exemptions from these prohibitions. It provides, in relevant part, that nothing in section 8 shall be construed as prohibiting "(2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C.A. § 2607(c)(2).

The Department's view of **captive reinsurance** is that the arrangements are permissible under **RESPA** if the payments to the reinsurer: (1) are for **reinsurance** services "actually furnished or for services performed" and (2) are *bona fide* compensation that does not exceed the value of such services.

The rationale behind this two-step analysis is that in instances in which a lender selects the mortgage insurer, including under a **captive reinsurance** arrangement, the lender's actions would constitute a referral of loans to a mortgage insurer, by influencing the borrower's selection of his or her mortgage insurer. *See* 24 C.F.R. § 3500.14(f) (definition of "referral"). If the lender or its **reinsurance** affiliate is merely given a thing of value by the primary insurer in return for this referral, in monies or the opportunity to participate in a money-making program, then section 8 would be violated; the payment would be regarded as payment of the referral of business or a split of fees for settlement services. If, however, the lender's **reinsurance** affiliate actually performs **reinsurance** services and compensation from the primary insurer is *bona fide* and does not exceed the value of the **reinsurance**, then such payments would be permissible under subsection 8(c). Conversely, any **captive reinsurance** arrangement in which **reinsurance** services are not actually performed or in which the payments to the reinsurer are not *bona fide* and exceed the value of the **reinsurance** would violate section 8 as an impermissible referral fee.

## A. Analysis of Specific Captive Reinsurance Arrangements

The Department will analyze **captive reinsurance** arrangements to determine if the arrangements comply with **RESPA**. Factors which may cause the Department to give particular scrutiny to an arrangement and cause it to apply the test set forth in Part II(B) of this analysis include, but are not limited to, the following:

1. The amount charged directly or indirectly to the consumer for mortgage insurance in a **captive** program is greater than the amount charged to the consumer for mortgage insurance not involving **reinsurance** for a similar risk.
2. The costs (premiums minus a ceding commission, if applicable) paid to the **captive** reinsurer are greater than the cost for comparable non-**captive reinsurance** available in the market.
3. The lender restricts its mortgage insurance business in whole or to a large extent to a primary mortgage insurer that has a **reinsurance** agreement with the lender's **captive** reinsurer.
4. Any major secondary market institution refuses to purchase mortgages insured under a particular **captive reinsurance** agreement or places special conditions on such purchases.

5. Any credit rating agency reduces the rating of the primary mortgage insurer in whole or in part because of agreements with **captive** reinsurers.
6. Any State regulatory body questions the adequacy of the reserves maintained by the primary mortgage insurer or the **captive** reinsurer.
7. The primary insurer's agreement to reinsure is conditioned on the affiliated lender's agreement to refer all of or a predetermined volume of its mortgage insurance business to the primary insurer, or the terms of the agreement (such as the percentage of the premium per loan reinsured that is paid to the reinsurer by the primary insurer) fluctuate depending on the volume of the primary insurance business referred by the lender to the primary insurer. The presence of either of these conditions makes it more likely that at least a portion of the compensation paid to the reinsurer is for the referral of mortgage insurance business.
8. Adequate consumer disclosure is not provided. The Department believes that consumers would be well served by a meaningful disclosure[FN18] and a meaningful choice[FN19] for consumers about having their loans included in a **captive reinsurance** program. A demonstrated willingness to provide such a disclosure may indicate that the arrangement is designed to provide real **reinsurance**.

The Department does not consider any of these eight factors to be determinative of whether an arrangement merits scrutiny by the Department, nor does it regard the absence of any of these factors to be determinative that further scrutiny is not merited. In addition, as noted in Part II(B), the Department may consider these eight factors in applying the test in Part II(B), to the extent applicable.

**B. Test for Whether a Captive Reinsurance Arrangement Violates RESPA**

Where the Department scrutinizes a **captive reinsurance** arrangement, it will apply a two-part test for determining whether the arrangement violates **RESPA**. The Department will first determine whether the **reinsurance** arrangement meets three requirements that establish that **reinsurance** is actually being provided in return for the compensation. If one or more of the requirements is not met, the inquiry will end, and the arrangement will be regarded as an impermissible **captive reinsurance** arrangement under **RESPA**. If all of the requirements are met, the Department will determine whether the compensation exceeds the value of the **reinsurance**. To facilitate its analysis, the Department may use information obtained from the lender, the primary insurer, the **captive** reinsurer, or other sources, including data on the rate, magnitude, and timing of default losses and mortgage insurance payments and any other information necessary to undertake the analysis and may exercise its subpoena authority pursuant to 24 C.F.R. part 3800 to obtain such information.

**1. Determining that Reinsurance Is Actually Being Provided in Return for the Compensation**

To determine that a real service—**reinsurance**—is performed by the reinsurer for which it may legally be compensated, the following requirements must be satisfied:

a. *There must be a legally binding contract for **reinsurance** with terms and conditions conforming to industry standards.*
b. *The reinsurer must post capital and reserves satisfying the laws of the state in which it is chartered and the **reinsurance** contract between the primary insurer and the reinsurer must provide for the establishment of adequate reserves to ensure that, when a claim against the reinsurer is made, funds will exist to satisfy the claim.* Unless the reinsurer is adequately capitalized and adequate reserves (which may include letters of credit or guarantee arrangements) and funds are available to pay claims, real services are not being provided.
c. *There must be a real transfer of risk.* The **reinsurance** transaction cannot be a sham

under which premium payments (minus a ceding commission, if applicable) are given to the reinsurer even though there is no reasonable expectation that the reinsurer will ever have to pay claims. This requirement for a real transfer of risk would clearly be satisfied by a quota share arrangement, under which the reinsurer is bound to participate *pro rata* in every claim. The requirement could also be met by excess loss arrangements, if the band of the reinsurer's potential exposure is such that a reasonable business justification would motivate a decision to reinsure that band. Unless there is a real transfer of risk, no real **reinsurance** services are actually being provided. In either case, the premiums paid (minus a ceding commission, if applicable) must be commensurate to the risk, as discussed in Part II(B)(2).

In evaluating these requirements, the Department may also consider the factors in Part II(A), to the extent relevant. If any of the requirements in this Part II(B)(1) is not met, the arrangement will be regarded as an impermissible **reinsurance** arrangement under **RESPA**. If any of the requirements is not met, the "service" being compensated would appear to be the lender's referral of business to the mortgage insurer, which **RESPA** prohibits.

### 2. Determining that the Compensation Paid for Reinsurance Does Not Exceed the Value of the Reinsurance

If the requirements in Part II(B)(1) for determining that **reinsurance** is actually being provided in return for the compensation are met, the Department will then determine whether the compensation paid for **reinsurance** does not exceed the value of the **reinsurance**. The Department will evaluate whether the compensation is commensurate with the risk and, where warranted, administrative costs. The Department's evaluation of this requirement may:

— Compare, using relevant mathematical models, the risk borne by the **captive** reinsurer with the payments provided by the primary insurer.
— Analyze the likelihood of losses occurring, the magnitude and volatility of possible losses, the amount of payments received, the timing of the payments and potential losses, current market discount rates, and other relevant factors.
— Take into account the relative risk exposure of the primary lender and the **captive** reinsurer.
— Consider the extent to which the lender or the firm controlling the **captive** reinsurer is shielded from potential losses by inadequate reserves and a corporate structure that segregates risks.
— Examine other financial transactions between the lender, primary insurer, and **captive** reinsurer to determine whether they are related to the **reinsurance** agreement.
— Examine whether the ceding commission is commensurate with the administrative costs assumed by the primary insurer.

In making this evaluation, the Department may also consider the factors in Part II(A), to the extent relevant. If the Department concludes that the compensation paid for the **reinsurance** exceeds the value of the **reinsurance** pursuant to the analysis in this Part II(B)(2), the arrangement will be regarded as an impermissible **reinsurance** arrangement under **RESPA** and the payments exceeding the value of the **reinsurance** will be considered a referral fee or unearned fee.

### III. CONCLUSION

In setting forth this analysis, the Department notes the trend in the mortgage market toward increased diversification of risk. The Department welcomes such trends to the extent that such arrangements increase the availability of mortgage credit. Where

**RESPA** would not preclude such arrangements, the Department would generally support them.

The Department believes the system of mortgage insurance and **reinsurance** is not necessarily comparable to other types of settlement services. Thus, the Department could analyze other settlement service programs differently, depending on the facts of the particular program.

I trust that this guidance will assist you to conduct your business in accordance with **RESPA**.

Sincerely,
Nicolas P. Retsinas
Assistant Secretary for Housing—Federal Housing Commissioner